**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CLIFTON A. PHILLIPS, JR.,

                               Plaintiff,

   v.                                         No. 03-CV-1019
                                                (DNH/DRH)

ROY A. GIRDICH, Superintendent, Upstate
Correctional Facility; JOHN J. DONELLI, First
Deputy Superintendent, Upstate Correctional Facility;
and A. BOUCAUD, Deputy Superintendent of
Administration, Upstate Correctional Facility,

                                 Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CLIFTON A. PHILLIPS, JR.<br>No. 99-A-1263<br>Plaintiff Pro Se<br>Upstate Correctional Facility<br>Post Office Box 2001<br>309 Bare Hill Road<br>Malone, New York 12953 | |
| HON. ANDREW M. CUOMO<br>Attorney General for the<br>   State of New York<br>Attorney for Defendants<br>The Capitol<br>Albany, New York 12224-0341 | CHRISTOPHER W. HALL, ESQ.<br>Assistant Attorney General |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Clifton A. Phillips, Jr. ("Phillips"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.[2]  Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 42.  Phillips opposes the motion.  Docket No. 45.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are presented in the light most favorable to Phillips as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

At all relevant times, Phillips was an inmate in the custody of DOCS at Upstate Correctional Facility ("Upstate").  See Phillips Dep. (Docket No, 42, Ex. A) at 18.  Prior to September 19, 2002, Phillips was allowed periodic contact visits at Upstate.  On September 19, 2002, Superintendent Girdich wrote Phillips advising that because of his improper conduct during a visit and a positive drug test,[3] all future visits would be on a non-contact basis.  See Donelli Aff. (Docket No. 42), Ex. C; see also Compl.  After nearly three years of

---

[2] Liberally construed, Phillips alleges that "C.O. Trombley" filed a false misbehavior report against him. See Compl.  However, Phillips has failed to name C.O. Trombley as a defendant in this action.  Moreover, Phillips' contention that this constitutes a constitutional claim must fail because he does not challenge the disciplinary hearing itself and the mere allegation that a misbehavior report was false without a challenge to the due process of the subsequent disciplinary hearing fails to state a claim.  See Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Jenner v. Curtin, 979 F. Supp. 153, 154 (N.D.N.Y. 1997).

[3] Phillips' history of drug use and violations of visiting procedures while in DOCS custody included at least ten drug-related charges, four violations of visiting procedures, three refusals of urinalysis testing, and five smuggling charges.  Donnelli Aff. (Docket No. 42) at ¶ 32.

2

appeals, Phillips was advised that his contact visitation privileges were being restored. See id. at Ex. U.

On May 25, 2003, after a disciplinary hearing, defendant Boucaud found Phillips guilty of a drug use charge stemming from a positive drug test. See Boucaud Aff. (Docket No. 42) at ¶¶ 16-17 & Ex. A. Boucaud sentenced Phillips to eighteen months in the Special Housing Unit ("SHU")[4] and eighteen months loss of packages, commissary, telephone, and earphones (i.e. headphones). See Boucaud Aff., Ex. A. On July 23, 2003, the eighteen-months in SHU was modified to twelve months. See id. Phillips' headphones privileges were also restored on October 8, 2003. See id. at Ex. C. Phillips also alleges that defendants subjected him to "systematic harassment" and discriminated against him and other minority inmates. See Compl. This action followed.[5]

## II. Discussion

Phillips asserts three causes of action in his complaint, each alleging that defendants (1) subjected him to "systematic harassment and the intentional infliction of pain" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; (2) denied

---

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-or double-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2004). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[5] On November 24, 2003, the district court dismissed Phillips' suit for failing to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of New York. See Docket No. 11. However, on May 17, 2005, the Second Circuit Court of Appeals vacated the judgment of the district court and remanded Phillips' case for further proceedings. See Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005).

...
...

him contact visits with his family in violation of the First Amendment; and (3) discriminated against him on the basis of race and gender in violation of the Fourteenth Amendment. See Compl. at ¶ 7; see also Phillips Dep. at 13, 39.  Defendants seek summary judgment on all claims.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special

...

solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

### B. First Amendment

### 1. Visitation/Free Association

Phillips contends that defendants "denied [him] visits that [he] was entitled to in violation of the First Amendment."  Compl. (Second Cause of Action).[6]

It is well established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."  Turner v. Safley, 482 U.S. 78, 84 (1987).  However, "inmates who claim that restrictions on their visitation privileges violated their First Amendment right to association . . . must allege facts sufficient to support a finding that the challenged restrictions bear no 'rational relation to legitimate penological interests.'"

---

[6] In his supplemental reply memorandum of law, Phillips states that he "do[es] not challenge himself being placed on non-contact visits.  Initially the defendant might have been justified in putting plaintiff on non-contact visits considering plaintiffs disciplinary history."  See Pl. Supp. Reply Mem. of Law (Docket No. 47) at 2; see also Phillips Aff. (Docket No. 45) at ¶ 3 ("I have never alleged in my complaint or in my deposition that I was improperly denied contact visits").  Instead, Phillips appears to challenge six separate instances where his family and lawyer were denied visitation, alleging that these acts constitute "systematic harassment."  Pl. Supp. Reply Mem. of Law at 4.  Regardless, liberally construing the complaint, Phillips has alleged a First Amendment right to associate claim.  Moreover, this Court is mindful of the Second Circuit's statement in Phillips v. Girdich, 408 F.3d at 130, that the district court's imagination in determining what other claims, if any, Phillips has raised "should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings."  See also McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (holding that the pleadings of a pro se plaintiff should be liberally construed and interpreted to "raise the strongest arguments that they suggest" (citation omitted)).

5

Calderon v. Conn. Dep't of Corrs., No. Civ. 04-1562 (JCH)(HBF), 2006 WL 3085716, at *9 (D. Conn. Sept. 1, 2006) (quoting Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003) (internal citations and quotation marks omitted)).  The Supreme Court has held that four factors are relevant in deciding whether a regulation affecting prisoners' constitutional rights survives a constitutional challenge:

> whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation.

Bazzetta, 539 U.S. at 132 (quoting Turner, 482 U.S. at 89-91) (internal quotation marks omitted)); see also Hernandez v. McGinnis, 272 F. Supp. 2d 223, 227 (W.D.N.Y. 2003); Calderon, 2006 WL 3085716, at *9.

On September 19, 2002, Girdich denied Phillips contact visits due to improper conduct during a September 2, 2002 visit and an ensuing positive drug test.  See Donelli Aff., Ex. C.  Girdich also noted that since Phillips arrived at Upstate, he had incurred sixteen separate misbehavior charges.  Id.  Further, Girdich stated that:

> Based on the above noted history and my experience, I have determined that your participation in the visiting program appears to have been a major factor in serious drug related smuggling and possession incidents.  Your involvement in these incidents causes grave concern for the safety and good order of this facility as well as the health and well being of yourself and possibly other inmates.  Effective immediately ALL your VISITS will be NON-CONTACT.  This is not intended to be punishment, but rather a precautionary limitation to prevent future misconduct, and to maintain the safety and good order of the facility.  You may write me on a monthly basis to make a statement on the need for the continuation of this special condition.

Id. (emphasis in original).  Between September 19, 2002 and August 7, 2003, Phillips wrote numerous letters to Girdich and Deputy Commissioner and Counsel Annucci requesting

6

that his contact visits be restored.  See Donelli Aff, Exs. F-H, J-N; see also id. at Ex. P (denying Phillips' September 9, 2003 request for the reinstatement of his contact visitation privileges).  Although each request was denied, Phillips was again reminded that he could write to Girdich on a monthly basis to restore his contact visits.  Id.  On August 7, 2003, Phillips again wrote Girdich requesting that his contact visit privileges be reinstated.  See Donelli Aff., Ex. O.  That same day, Girdich denied Phillips' request, noting that he was found guilty of a drug use violation on May 25, 2003.  Girdich also stated that:

> I will not modify your non contact visitation status at this time.  Write me after the first of October 2004 and I will reconsider your request, predicated on the fact that you have not received any more misbehavior reports for DRUG USE or behavior that is serious in nature and would lead a reasonable person to believe that you would not abide by the Visiting Room rules.  This would be a period of one and one half years being report free, exhibiting you are making a valid attempt to refrain from DRUG USE.

Id. (emphasis in original).

On October 12, 2004, acting Deputy Superintendent Hawk denied Phillips' request to restore his contact visitation privileges, citing "misbehavior reports for drug use and other violations" that Phillips received after he was advised to remain "report free."  Donelli Aff., Ex. Q; see also id. at Ex. R.  On November 22, 2004, Deputy Superintendent of Programs Tirone reviewed Phillips' letters and file and advised Phillips that his "future visitation privileges are in [his] control . . . If you remain misbehavior report free for one year, a reconsideration will be entertained concerning your visitation privileges."  Donelli Aff., Ex. S.  Finally, on June 27, 2005, Superintendent Woods restored Phillips' contact visitation privileges.  See Donelli Aff., Ex. U.

Here, applying the four Turner factors, it is clear that the approximately three-year suspension of Phillips' contact visitation privileges did not violate his constitutional rights.

The temporary suspension clearly had a valid, rational connection to a legitimate governmental interest: deterring Phillips' visitor-related misconduct and drug use. The regulations pursuant to which Phillips' contact visit privileges were temporarily revoked promoted safety for the facility, which the Supreme Court has found is "perhaps the most legitimate of penological goals." Bazzetta, 539 U.S. at 133. Further, the Court has held that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior . . . ," including restricting "visitation privileges to control and deter substance abuse violations." Id. at 134.

Next, to permit contact visits with an inmate who has a history of visitor-related misconduct would require an increase of corrections officers to deter similar conduct and ensure the safety of other inmates and visitors. See Bazzetta, 539 U.S. at 135; see also Hernandez, 228 F. Supp. 2d at 228. The Supreme Court has stated that "[w]hen such consequences are present, [the Court is] 'particularly deferential' to prison administrators' regulatory judgments." Bazzetta, 539 U.S. at 135 (quoting Turner, 482 U.S. at 90); see also Donelli Aff., Ex. C (citing Phillips' involvement in past misconduct as a cause of "grave concern for the safety and good order of [Upstate] as well as the health and well being of yourself and possibly other inmates").

Moreover, Phillips clearly had alternative means to exercise his right of free association. It is undisputed that Phillips did not have all visitation privileges suspended. Instead, he was simply limited to non-contact visits. See Donelli Aff. at ¶ 67; Defs. Statement of Material Facts (Docket No. 42) at ¶ 4; Pl. Reply Statement of Material Facts (Docket No. 45) at ¶ 4. Thus, he was still fully capable of communicating with his family and any other visitors. See Bazzetta, 539 U.S. at 135 (finding that alternatives such as

8

letter writing and telephone calls suffice to provide alternative forms of communication). Finally, Phillips has failed to suggest "any alternatives that would meet the 'high standard' required to show that the penological interests at stake could have been equally well served while fully accommodating the asserted right." Hernandez, 272 F. Supp. 2d at 228 (citation omitted).

Therefore, it is recommended that defendants' motion on this ground be granted.[7]

### C. Eight Amendment

Phillips contends that defendants subjected him to systematic harassment and the intentional infliction of pain in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. See Compl. (First Cause of Action).

The Eighth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-34 (2001). It prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Eighth Amendment also imposes a duty upon prison officials

---

[7] In his reply pleadings, Phillips contends that he was denied a legal visit and, thus, appears to be alleging a First Amendment access to courts claim. See Pl. Reply Mem. of Law (Docket No. 45) at 5 ("Plaintiffs lawyer was denied a visit and couldn't leave paper's . . ."); see also Phillips Dep. at 22. However, Phillips' complaint is devoid of any reference to this claim. Regardless, even assuming that Phillips had alleged an access to courts claim in his complaint, it is wholly without merit. Although Phillips contends that the denial of his legal visit delayed the filing of his habeas corpus petition by "approximately six months," the exhibits filed in response to defendants' motion for summary judgment demonstrate that an extension of approximately two months was requested and granted. See Docket No. 45, Exs. 36-38. Thus, Phillips has failed to allege any actual injury from the denial of this single legal visit, much less that defendants' conduct was deliberate or malicious. See Cancel v. Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citation omitted).

"to take reasonable measures to guarantee the safety of the inmates themselves." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official violates this Eighth Amendment duty only when two criteria are established. First, the deprivation must be "'objectively, sufficiently serious' that [the inmate] was denied 'the minimal civilized measure of life's necessities.'" Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "The objective component . . . is also context specific, turning upon 'contemporary standards of decency.'" Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citations omitted)).

Second, a defendant "must have [acted with] a 'sufficiently culpable' state of mind." Farmer, 511 U.S. at 834 (citation omitted). "'In prison-condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (citation omitted); see also Gaston, 294 F.3d at 164. "Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996).

### 1. Threats and Verbal Harassment[8]

Throughout his complaint, Phillips alleges that defendants verbally threatened and harassed him, including using racial slurs. See Compl. However, verbal harassment and threats in a prison setting do not rise to the level of a constitutional violation. See Ebron v.

---

[8] In his reply memorandum of law, Phillips contends that his complaint does not allege verbal harassment. See Pl. Reply Mem. of Law at 2; see also Phillips Aff. at ¶ 5 ("Plaintiff does not, and have not alleged verbal harassment."). Instead, Phillips contends that the harassment was "systematic." Id.

10

Lantz, No. Civ. 04-1375 (MRK), 2006 WL 18827, at *3-4 (D. Conn. Jan. 4, 2006) (citing cases); see also Morgan v. Ward, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988) (holding that the use of racial insults by guards against inmates did not constitute an Eighth Amendment violation).

Therefore, it is recommended that defendants' motion on this ground be granted.

### 2. Contact Visits

Phillips contends that he was unlawfully denied all contact visits for three years and that on six separate occasions, his family was prevented from seeing him. See Compl.; see also Phillips Dep. at 21, 26.

Here, Phillips' three-year loss of contact visits and six separate incidents of not being able to see his family "did not dramatically depart from accepted standards for conditions of confinement, create 'inhumane prison conditions,' or otherwise give rise to any conditions or events that would violate the Eighth Amendment's proscription of 'cruel and unusual punishments.'" Hernandez, 272 F. Supp. 2d at 228 (quoting Bazzetta, 539 U.S. at 136-37).

Phillips was permitted visitation but was barred only from direct contact. The denial of contact in these circumstances fell well short of constitutional dimension. Moreover, the denial of any visitation on six occasions over a three-year period amounts at worst to incidental occurrences, particularly where there is no evidence of intentional or even reckless conduct by any defendant. Thus, Phillips has failed to demonstrate that the denial of his contact visits, or the six separate incidents where he was prevented from seeing his family, constituted, in any way, cruel and unusual punishment under the Eighth

Amendment. Therefore, it is recommended that defendants' motion on this ground be granted.

### 3. Loss of Headphones

Liberally construed, Phillips' complaint contends that his denial of headphones for eighteen months constitutes cruel and unusual punishment. However, during his deposition, Phillips admitted that he was only denied headphones for six months because the original disposition was overturned. See Phillips Dep. at 69; see also Boucaud Aff., Ex. C. Regardless, the loss of headphones for any period of time clearly does not constitute the denial of the "minimal civilized measure of life's necessities." Gaston, 249 F.3d at 164 (citation and internal quotation marks omitted).

Therefore, it is recommended that defendants' motion on this ground be granted.

### D. Fourteenth Amendment

### 1. Equal Protection

Phillips contends that he and other minorities were subject to disparate treatment because of their race.[9] See Compl. (Third Cause of Action).

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

---

[9] Phillips' complaint also alleges discrimination on the basis of gender. See Compl. (Third Cause of Action). However, Phillips admitted that he mistakenly plead gender discrimination and has withdrawn that claim. See Phillips Dep. at 115.

(1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. Civ. 95-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

  Here, Phillips makes only vague and conclusory allegations that he was denied the equal protection of the laws and thus has failed sufficiently to show an equal protection violation. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996). Although he contends that two "white guys," Mr. Gordon and Anthony Manasian, were given "more lenient treatment than minority guys," Phillips fails to offer any evidence beyond his self-serving assertions. See Compl.; see also Phillips Dep. at 109. During his deposition, Phillips admitted that he has no proof of any racial discrimination beyond the allegations contained in his complaint. See Phillips Dep. at 124. It is well-established that "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." Hernandez, 272 F. Supp. 2d at 226 (citing Carbonell v. Goord, No. Civ. 99-3208 (AJP), 2000 WL 760751, at *5 (S.D.N.Y. June 13, 2000). Thus, Phillips has failed to raise any triable question of fact as to this claim.

  Therefore, it is recommended that defendants' motion on this ground be granted.

### 2. Due Process

Liberally construed, Phillips' complaint alleges that he was denied an impartial hearing officer.  See Compl.

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing officer.  Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974)).  Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process.  See Massachusetts Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); see also Luna v. Pico, 356 F.3d 481, 487-89 (2d Cir. 2004).  Here, Phillips alleges that a hearing officer, "Lt. Byno," threatened him prior to a disciplinary hearing.  See Compl.  However, beyond this vague allegation, Phillips offers no evidence to demonstrate that he was denied a fair and impartial hearing officer.  Moreover, Phillips did not name "Lt. Byno" as a defendant in this action.  Thus, Phillips has failed to raise an issue of material fact regarding his due process claim.

Therefore, it is recommended that defendants also be granted judgment on this claim.

### E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects government officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would

have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Phillips' allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, it is recommended that defendants' motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 42) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: September 5, 2007
         Albany, New York

*David R. Homer*
United States Magistrate Judge